# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ABIDOON AL-DILAIMI,

               Petitioner,                           Case Number: 05-CV-71003

v.                                              HONORABLE DENISE PAGE HOOD

MARY BERGHUIS,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

       Petitioner Abidoon Al-Dilaimi has filed a *pro se* petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  At the time he filed his petition, Petitioner was incarcerated at the Earnest C.

Brooks Correctional Facility in Muskegon Heights, Michigan.  He is currently released on a term

of parole.  Petitioner challenges the constitutionality of his 2000 conviction for assault with intent

to commit murder.  For the reasons set forth below, the Court denies the petition.

## I.      Facts

       Petitioner's conviction arises from the stabbing of Kadhum Al-Ebadi on February 23, 2000,

in the City of Detroit.  Petitioner was tried jointly with his sons Ali and Akram Al-Dilaimi.  The

Michigan Court of Appeals summarized the facts adduced at trial as follows:

> The defendants were tried together in February 2001.  Abidoon Al-Dilaimi is the
> father of Akram and Ali Al-Dilaimi.  The incident leading to the instant charges
> occurred on February 23, 2000, in the city of Detroit, in the area of Trenton Street,
> where the Al-Dilaimi household is located.
>
> The complainant, Kadhum Al-Ebadi, testified that on February 23, 2000, he was in
> a truck with Amanda Sitto, a passenger, in the area of Trenton Street.  The two were
> going to borrow a truck from a man.  Al-Ebadi testified that he got out of the truck,
> and that a vehicle driven by Ali, in which Akram was a passenger, tried to run him

down. Al-Ebadi testified that the Al-Dilaimi brothers got out of their vehicle and came after him armed with knives, and that Abidoon appeared on foot, with a knife. Al-Ebadi testified that he ran, but stopped when he heard Ms. Sitto scream, and that he was then repeatedly stabbed in the shoulder and arm by Abidoon, that Ali at one point tried to stab him in the heart, and that Akram repeatedly kicked him in the face and head as he lay on the ground. Ms. Sitto's testimony was mostly in accord, although there were discrepancies between the two. She testified that the vehicle Ali was driving crashed into the truck she and the complainant were borrowing and that the chasing of the complainant and the stabbing then ensued. Photos of Al-Ebadi's stab wounds, defensive wounds, and lacerations to the face and head were shown to the jury, and there was testimony that he spent about eight days in the hospital as a result of these injuries.

The defense's theory of the case was that on February 23, 2000, the complainant, Al-Ebadi, drove to the Al-Dilaimi's neighborhood and purposely rammed the vehicle the Al-Dilaimis were in, and that that is what caused the defendants to get out of the vehicle. Abidoon Al-Dilaimi was the only defendant to testify at trial. Through an interpreter, he testified to the extensive acrimony between his family and the Al-Ebadi family, dating back several years. He testified that in July 1999, after he objected to his son, Ali, marrying the complainant's fourteen year old niece, Ali was so severely beaten by the complainant that he sustained a serious head injury, which at the time of trial continued to cause Ali to have seizures, and that Ali had been hospitalized for two weeks as a result of the beating. Abidoon testified that on February 23, 2000, he was at home when his son, Akram, came into the house yelling that Kadhum was killing Ali, that he went outside and saw Kadhum choking Ali, and that he reacted to save his son. Abidoon testified that the complainant's 1999 beating of Ali was foremost in his mind when he rushed out to save Ali from the complainant in February 2000. Abidoon testified that he did not remember how long the incident lasted or whether he stabbed the complainant.

The defense presented an accident reconstructionist, who testified that a vehicle in a photo he examined (presumably, Ali's vehicle) was damaged around the front driver door, and that the damage could not have been caused by that vehicle hitting another vehicle, but rather, the impact had to have occurred the other way around. The defense also presented testimony of a Henry Ford Hospital nurse that cared for Ali during his two-week stay in the hospital following the July 1999 beating, who testified that Ali's head injuries were extremely serious and life threatening. Although the investigating officer of the July 1999 incident (and the February 2000 incident), Jackson, testified that he took pictures of Ali following the 1999 incident and that he remembered the injuries being very serious, Jackson testified that those photographs could not be located for trial. We glean from the record that Ali's 1999 head injuries left significant scarring on his head and face. The jury was able to observe Ali during trial.

2

The jury found Akram guilty of assault with intent to do great bodily harm less than murder, and found Ali and Abidoon guilty of assault with intent to commit murder. These appeals ensued.

*People v. Al-Dilaimi*, No. 236323, 2003 WL 21660773, *1-2 (Mich. Ct. App. July 15, 2003).

## II.     Procedural History

Following a jury trial in Recorder's Court for the City of Detroit, Petitioner was convicted of assault with intent to commit murder.  On February 15, 2000, he was sentenced to five to fifteen years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.      Defendant-appellant's conviction should be reversed because the prosecutor's comments and actions throughout the trial denied him his right to a fair and impartial trial.

II.     Defendant-appellant is entitled to a remand for a *Ginther* hearing, where the trial court erred in denying his *pro per* motion for said hearing.

III.    Defendant-appellant's conviction should be reversed because there was insufficient evidence to find for it; alternatively, the directed verdict motion should have been granted.

IV.     Defendant-appellant's conviction should be reversed because the trial court erred in denying admission of a prior bad act of complainant.

The Michigan Court of Appeals affirmed Petitioner's conviction.  *People v. Al-Dilaimi*, No. 236323 (Mich. Ct. App. July 15, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals and the following additional claims:

I.      Defendant-appellant should be granted a new trial and reversal of his conviction because he was denied a fair and impartial trial due to the cumulative remarks and errors of language interpretation by the interpreter, whose inaccurate summation of testimony and factual evidence submission to myself and the jury did taint the trial

3

matters where I was unable to properly cross examine and challenge prosecutor's witness.

II.    Defendant-appellant's conviction and appeal of the conviction should be reversed because the defendant's understanding of the trial matter and procedures were not made clear to him by the interpreter appointed, where the interpretations were not exact and/or were paraphrased by the interpreter during evidence admission testimony depriving me and jurors from receiving un-biased, un-prejudiced accounting and answers during examination.

The Michigan Supreme Court denied leave to appeal. *People v. Al-Dilaimi*, No. 124500

(Mich. Apr. 1, 2004).

Petitioner then filed a petition for a writ of habeas corpus, presenting the following claims:

I.    The flagrant series of inappropriate comments by the prosecutor in this case deprived Petitioner of his right to due process and to a fair trial under the Fourteenth Amendment to the United States Constitution.

II.    Ineffective assistance of trial counsel.

III.    Ineffective assistance of appellate counsel.

IV.    Failure of Michigan Supreme Court to remand to the Michigan Court of Appeals for further proceedings on the issue of Petitioner's inability to understand the trial court proceedings without an interpreter leaves the record inadequate to determine whether Petitioner was denied due process of law when he was forced to proceed at trial without an interpreter.

Petitioner's ineffective assistance of appellate counsel claim was unexhausted. Therefore,

the Court stayed the petition to allow Petitioner to exhaust the claim by filing a motion for relief

from judgment in the trial court.

Petitioner filed a motion for relief from judgment in the trial court, raising the following

claims: (i) denied right of confrontation because interpreters assigned to him paraphrased testimony,

the complainants spoke in English rather than Iraqi, carried on conversations with the complainants

and spoke at the same time as the complainants; (ii) denied due process because interpreters assigned

4

to him changed daily, spoke a different dialect than Petitioner, and paraphrased testimony; and (iii) ineffective assistance of appellate counsel.  The trial court denied the motion.  *People v. Al-Dilaimi*, No. 00-002198 (Wayne County Circuit Court Sept. 30, 2005).  Petitioner sought leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court.  Both appellate courts denied leave to appeal.  *People v. Al-Dilaimi*, No. 268781 (Mich. Ct. App. Sept. 15, 2006); *People v. Al-Dilaimi*, No. 132325 (Mich. Jan. 29, 2007).

Petitioner then filed a Motion to Lift Stay in this Court.  The Court lifted the stay and directed Respondent to file a responsive pleading.  Respondent has filed an answer to the petition and Petitioner has filed a reply and the matter is now ready for review.

## III.    Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *(Terry) Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

## IV.   Analysis

### A.   Prosecutorial Misconduct

In his first habeas claim, Petitioner argues that the prosecutor engaged in several acts of misconduct. Specifically, Petitioner objects to the prosecutor asking him during cross-examination whether he was lying and whether he had a selective memory. Petitioner objects to the prosecutor's closing argument, during which the prosecutor argued that Petitioner had a clear memory when it

6

worked to his advantage to remember something and a poor memory when it did not and that Petitioner lied during his trial testimony. Petitioner also argues that the prosecutor mischaracterized the evidence presented at trial during his closing argument.

Respondent argues that these prosecutorial misconduct claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Michigan Court of Appeals, although finding that the claim was not properly preserved, nevertheless considered the propriety of the prosecutor's conduct. The Michigan Court of Appeals held, in pertinent part:

> The three defendants contend on appeal that the prosecutor's remarks that Abidoon Al-Dilaimi had "selective recall," and was lying when he testified, deprived them of

7

due process and a fair trial. Defendants also contend that the prosecutor made cryptic remarks meant to demean defense counsel in the eyes of the jury, resulting in prejudice to all of them.

This Court reviews questions of prosecutorial misconduct on a case by case basis to determine whether the conduct denied the defendant a fair and impartial trial. *People v Bahoda*, 448 Mich. 261; 531 N.W.2d 659 (1995). Because there was no objection to the challenged prosecutorial remarks, this Court's review is for plain error affecting substantial rights. *People v Carines*, 460 Mich. 750, 763-764; 597 N.W.2d 130 (1999). The plain error must have affected substantial rights, and generally requires a showing by the defendant that the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. *Id.*

The three defendants challenge the following prosecutorial remarks made in closing argument:

> Then you have Mr. Abidoon Al-Dilaimi testify. He has a perfectly good memory when it suits his advantage and he has no memory at all when it doesn't. The polite term is selective recall. The correct term is lying. . .
>
> * * *
>
> So, he (Abidoon Al-Dilaimi) knows very well, very well, ladies and gentlemen, whether he had a knife. And this selective recall is a lie.

We conclude that the challenged remarks do not warrant reversal. As summarized above, the defense presented a different account of the February 23, 2000 incident than did the prosecution. The prosecutor could properly argue inferences to be drawn from the conflicting testimony, and that Abidoon was not worthy of belief. *People v Buckey*, 424 Mich. 1, 14-15; 378 N.W.2d 432 (1985). The remaining challenged remarks were minor, cryptic remarks made by the prosecutor and do not warrant reversal. The jury was instructed that attorney commentary was not evidence.

*People v. Al-Dilaimi*, 2003 WL 21660773, *2-3 (Mich. Ct. App. July 15, 2003).

"A prosecutor should not give his own opinion as to the credibility of witness. . . . [T]his does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (internal citation omitted).

[A] prosecutor may assert that a defendant is lying during her closing argument when

8

> emphasizing discrepancies between the evidence and that defendant's testimony.  To avoid impropriety, however, such comments must reflect reasonable inferences from the evidence adduced at trial.  Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility.

*United States v. Francis,* 170 F.3d 546, 551 (6th Cir.1999) (internal citation and quotation marks omitted).

In this case, the prosecutor's questions and comments regarding the veracity of Petitioner's testimony were reasonable arguments based upon the testimony adduced at trial.  In addition, Petitioner has failed to show that the prosecutor misstated the evidence.  "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.2005).  However, "counsel cannot misstate evidence."  *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001).  A review of the record shows that the prosecutor simply highlighted testimony favorable to the prosecution, argued that Petitioner's testimony was not believable, and did not misstate the evidence.  Accordingly, the Court denies habeas relief on this claim.

### B.       Ineffective Assistance of Counsel

Petitioner next claims that his trial attorney was ineffective in failing to produce witnesses who would have aided his defense.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  Second, a petitioner must show that counsel's

deficient performance prejudiced petitioner.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.  The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689.

The Michigan Court of Appeals, in denying Petitioner's claim that the trial court erred in failing to grant an evidentiary hearing, found Petitioner's claim that trial counsel erred in failing to investigate and produce witnesses was without merit, stating, in pertinent part:

> Abidoon's motion asserted that his trial counsel did not investigate and present evidence as he should have.  The first seven pages of the motion set forth in minute detail the history of the acrimony between the Al-Dilaimi and Al-Ebadi families. This acrimony was extensively explored at trial.  Abidoon's motion also argued that he wanted to tell the court the "whole story" because the court had never heard the whole story.  Among the facts the trial court never heard, according to Abidoon's motion, was that neither he nor Ali had been armed with knives.  The jury clearly disbelieved that account.  Abidoon's motion also argued that had certain witnesses been called to testify they would have supported his version of events, including the man he was working with when Akram ran into the house and told Abidoon that Al-Ebadi was killing Ali.  There is no indication that the names Abidoon raised in his motion actually witnessed the incident.  Under these circumstances, we conclude that the trial court's denial of Abidoon's motion for a *Ginther* hearing was not an abuse of discretion.

*Al-Dilaimi,* 2003 WL at * 5.

"To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, Petitioner must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different more favorable result at trial." *Werner v. Jackson*, 2009 U.S. Dist. LEXIS 27686, No. 06-cv-11217, *35

10

(E.D. Mich. March 30, 2009) (citing *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003)).

Petitioner has failed to show that any additional witnesses would have produced a more favorable

result at trial. Substantial evidence was presented at trial to show that Petitioner stabbed the victim.

In addition, Petitioner's attorney ably presented the defense theory to the jury. Considering the

strength of the evidence against Petitioner and the relatively vague nature of Petitioner's arguments

that additional witnesses should have been called, the Court concludes that Petitioner has failed to

show that counsel was ineffective in this regard.

### C.    Procedural Default

Respondent argues that Petitioner's remaining claims are procedurally defaulted. In his

fourth claim for habeas relief, Petitioner argues that his right to confrontation and due process were

violated because his interpreters spoke different dialects than he did, resulting in their paraphrasing

testimony rather than translating word-for-word, and the complainants, attorneys, and interpreters

frequently spoke simultaneously making it impossible for Petitioner to understand the proceedings.

Petitioner also argues in his third claim that his appellate attorney was ineffective in failing to raise

the interpreter-related issues on direct review, in failing to request an interpreter to communicate

with his client, and in failing to raise prosecutorial-misconduct related issues on direct appeal.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files

an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court

at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.

12

*Rust*, 17 F.3d at 161.  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

"Whether a state court has actually enforced a procedural sanction depends on whether 'the last state court from which the petitioner sought review . . .  invoked the stated procedural rule as a basis for its decision to reject reviewing the petitioner's federal claims.'"  *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007) (quoting *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).  Petitioner first properly raised his interpreter-related claims during state collateral proceedings.  The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the ground that Petitioner failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)."  *People v. Al-Dilaimi*, 477 Mich. 1004, 726 N.W.2d 44 (Mich. Jan. 29, 2007); *People v. Al-Dilaimi*, No. 268781 (Mich. Ct. App. Sept. 15, 2006).  In *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to preclude federal habeas review.

In contrast, in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Court of Appeals held that denials of leave to appeal by both Michigan appellate courts that were identical to those at issue in *Simpson* and *Borroughs*, did not invoke a state procedural rule sufficient to preclude federal habeas review.  These seemingly inconsistent decisions can be resolved by considering the differences in the respective trial court decisions.  In *Simpson* and *Burroughs*, the trial court did not address the merits of the petitioner's claims.  In contrast, in *Abela*, the lower state court ruled on the merits of

13

the petitioner's claims, but the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). The Sixth Circuit concluded that, under the circumstances, *Simpson* and *Burroughs* were inapplicable and the petitioner's claims were not procedurally defaulted. See *Abela* 380 F.3d at 922-24. In *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir.2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1897 (2008), the Sixth Circuit resolved the differences between the *Simpson* and *Burroughs* cases and *Abela* by concluding that Ivory's case was more like *Simpson* and *Burroughs* than *Abela* because no state court addressed the merits of Ivory's claims during post-conviction proceedings.

The pending case presents a procedural history similar to that of *Ivory, Simpson,* and *Borroughs*. The trial court specifically invoked Michigan Court Rule 6.508(D)(3) in denying Petitioner's motion for relief from judgment. Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000), *citing Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998). Thus, the Court finds that the doctrine of procedural default applies to preclude review of his fourth claim.

However, Petitioner alleges several ineffective assistance of appellate counsel claims, including a claim that counsel was ineffective in failing to raise the interpreter-related issues on appeal and that this is cause to excuse Petitioner's procedural default. Respondent argues that all of Petitioner's ineffective assistance of appellate counsel claims are procedurally barred. Appellate counsel cannot be expected to assert his or her own ineffectiveness on appeal. Therefore, the Sixth Circuit has held that an ineffective assistance of appellate counsel claim asserted at the first opportunity, on collateral review, is not defaulted. *See Whiting v. Burt*, 395 F.3d 602, 610 n.7 (6th Cir. 2005).

14

The Court now considers whether Petitioner's claims of ineffective assistance of appellate counsel excuse his default for claims related to the quality of interpreters provided at trial. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002)(quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)).

The trial court, in denying Petitioner's motion for relief from judgment, held that appellate counsel was not ineffective in failing to present these issues on direct appeal. The trial court held that Petitioner failed to show that any of the omitted claims were meritorious, noting that Petitioner's

15

allegations of inadequate interpreters were not supported by the record.  The trial court additionally observed no indication at any point in the record that Petitioner found the interpreters' services to be inadequate.  The trial court determined that the quality of the translations did not render Petitioner's trial fundamentally unfair.  Consequently, the trial court concluded that counsel was not ineffective in failing to raise meritless claims and that Petitioner was similarly not prejudiced by counsel's failure to raise these claims.  Petitioner has failed to show that the trial court's holding is contrary to or an unreasonable application of *Strickland* or *Barnes*.  Thus, Petitioner's interpreter-related claims are barred from federal habeas review unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court has explicitly held that the miscarriage of justice exception to the procedural default doctrine requires a showing that a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id.* at 326-32.  Thus, Petitioner must assert a constitutional error along with a claim of innocence.  To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327.  The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence.  In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial.  Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after trial.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt

16

> exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.  It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Therefore, Petitioner's fourth claim is barred from review.

Petitioner's claim that his appellate attorney was ineffective in failing to raise claims of prosecutorial misconduct on direct appeal was raised as cause to excuse Petitioner's procedural default. The Court addressed the merits of the prosecutorial misconduct claims *supra* and held that no misconduct occurred.  Therefore, Petitioner cannot show that his appellate attorney was ineffective in failing to raise a meritless claim.

Finally, Petitioner argues that his appellate attorney was ineffective in failing to hire a translator to assist counsel in communicating with Petitioner prior to filing an appeal.  Petitioner argues that had an interpreter been present Petitioner would have been better able to advise counsel regarding the claims Petitioner felt should be raised on appeal, including claims of prosecutorial misconduct.  Petitioner has failed to show that an interpreter was necessary for adequate communication nor has he shown that any potentially meritorious issues were excluded from direct appeal because Petitioner and his attorney could not effectively communicate.  Accordingly, habeas relief is denied on this claim.

## V.   Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the

17

Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  June 29, 2009

I hereby certify that a copy of the foregoing document was served upon Abidoon Al-Dilaimi, Reg. No. 360664, Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444 and counsel of record on June 29, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

18